**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Paul Raymond Weakley,<br><br>    Petitioner,<br><br>vs.<br><br>J. T. Shartle, Warden,<br><br>    Respondent. | No. CV-12-648-TUC-DCB (BGM)<br><br>**REPORT AND RECOMMENDATION** |

Currently pending before the Court is Petitioner Paul Raymond Weakley's *pro se* Petition Under 28 U.S.C. § 2241 For a Writ of Habeas Corpus by a Person in Federal Custody ("Petition") (Doc. 1). Respondent Shartle has filed his Return and Answer to Order to Show Cause Why Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 Should Not Be Granted ("Response") (Doc. 14). Petitioner filed a Response to Return an [sic] Answer Filed by Respondent on 6-27-13 ("Reply") (Doc. 19). Respondent then filed a Reply in Support of Return and Answer to Order to show Cause Why Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 Should Not be Granted ("Sur-reply") (Doc. 20). Petitioner then filed his Final Response (Doc. 22). Petitioner has also filed a Motion for Judgment in a Civil Case (Doc. 27). Pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure, this matter was referred to Magistrate Judge Macdonald for Report and Recommendation. The Magistrate Judge recommends that the District Court deny the Petition (Doc. 1). The Magistrate Judge further recommends that the District Court grant the Petitioner's Motion for Judgment in a Civil Case (Doc. 27) to the extent it seeks a ruling in

this case.

## I.  PROCEDURAL BACKGROUND

Petitioner is currently incarcerated at the United States Penitentiary ("USP-Tucson") in Tucson, Arizona. *See* Response (Doc. 14), Decl. of Theresa T. Talplacido (Exh. "1") at ¶ 2, Inmate History (Attach. "1"). From August 11, 2011 through February 17, 2012, he was out of USP-Tucson on a Federal Writ. *Id.* at ¶ 2, Attach. 1; *see also* Petition (Doc. 1) at 32. Petitioner is serving a life sentence from the Middle District of Pennsylvania for being a Felon in Possession of Firearms in violation of 18 U.S.C. § 922(g)(1) and Conspiracy Relation to Racketter Influenced and Corrupt Organizations in violation of 18 U.S.C. § 1962(d). *Id.* at ¶ 3, Sentence Monitoring Computation Data as of 6/19/2013 (Attach. "3"). In light of Petitioner's life sentence, he has no projected release date. *Id.* Petitioner filed a Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody on August 30, 2012. *See* Petition (Doc. 1) at 1.

Petitioner challenges a disciplinary conviction that resulted in his loss of good time credits. Petitioner alleges seven (7) grounds by which his Due Process rights were violated, including that (1) the incident report did not accuse Petitioner of placing the bag of liquid in the secured hallway; (2) the photographic evidence did not support a finding of guilt; (3) the liquid was not tested with the Alco-Sensor; (4) Disciplinary Hearing Officer ("DHO") Petricka found him guilty and sanctioned behavior (lying) for which he had not been charged; (5) DHO Petricka's alleged refusal to show and provide copies of the evidence used against him; (6) he was denied a proper hearing and investigation because his "Unit Team and SIA Mendez lied[;]" and (7) the Bureau of Prisons' ("BOP") alleged refusal to answer his appeals. *Id.* at 4-7. Petitioner requests that the Court issue its Order directing BOP to dismiss Inmate Misconduct # 2176729. *Id.* at 9.

## II.  FACTUAL BACKGROUND

On June 21, 2011, Senior Officer S. Obrochta "was conducting searches in the pipe

chases in D-1[,] [and] found two large khaki bags of homemade intoxicants attached to the back of the toilet button inside of the chase." Response (Doc. 14), Exh. 1, Incident Rpt. (Attach. "5"); Decl. of Vickie Petricka (Exh. "2") ¶ 3, Incident Rpt. (Attach. "2"). "The intoxicants were attached to the button servicing cell 212[,]" and Inmate Weakley was listed as the occupant of cell 212U, and an Inmate Rawlins was listed as the occupant of 212L. *Id.* "The intoxicants were tested with the Alco-sensor and received a reading of 0.400." *Id.* Officer Obrochta wrote an incident report detailing the discovery of the intoxicants and charging Petitioner with a violation of Code 222, Making, Possessing, or Using Intoxicants. *Id.* Later the same day, Acting Activities Lieutenant J. Olivas delivered a copy of the incident report to Petitioner and advised him of his rights. Response (Doc. 14), Exh. 1, Incident Rpt. (Attach. "5"); Decl. of Vickie Petricka (Exh. "2") ¶ 3, Incident Rpt. (Attach. "2"). That day, Petitioner stated he understood his rights, chose not to make any statement, and did not request any witnesses. *Id.* On June 22, 2011, Petitioner refused to attend the Unit Disciplinary Committee ("UDC") hearing held by Case Manager Mark County and Unit Manager John Pendleton. *Id.* The UDC referred the matter to the Disciplinary Hearing Officer ("DHO") due to the severity of the incident, and recommended disciplinary segregation and loss of Good Conduct Time ("GCT") as appropriate sanctions. *Id.* On the same date, Petitioner signed an unwitnessed Waiver of Appearance for the UDC hearing. *See* Response (Doc. 14), Exh. 1, Attach. "5"; Exh. "2", Attach. "2". Case Manager County noted that Petitioner did not wish to have a staff representative or witnesses present at the UDC. *Id.*

On June 24, 2011, Petitioner had a DHO hearing before DHO Vickie Petricka. Petition (Doc. 1) at 5; Response (Doc. 14), Exh. "1," Attach. "5" at 118. During the hearing, DHO Petricka asked Petitioner if his rights had been explained to him, and he "told her that a few days prior I had seen Unit Manager Pendleton who had me sign a piece of paper that he explained would allow me to see the DHO, and with no further understanding, I signed it." Petition (Doc. 1) at 5; *see also* Response (Doc. 14), Exh. "1," Attach. "5" at 118. DHO Petricka stopped the hearing for further investigation. Petition (Doc. 1) at 5; Response (Doc.

- 3 -

14), Exh. "1," Attach. "5" at 118.

On July 11, 2011 at approximately 8:45 a.m., DHO Petricka was advised by Special Investigative Agent ("SIA") Mendez that "he had concluded his investigation into UDC procedures not being followed." Response (Doc. 14), Exh. "1," Attach. "5" at 118. SIA Mendez told DHO Petricka that he had spoken to Petitioner, and was told that Petitioner was trying to delay the process. *Id.* At approximately 10:15 a.m. the same day, DHO Petricka reconvened Petitioner's disciplinary hearing. Petition (Doc. 1) at 5; *see also* Response (Doc. 14), Exh. "2" ¶ 3, Attach. "3."

At the hearing before DHO Petricka, Petitioner acknowledged that he had chosen not to appear before the UDC. Response (Doc. 14), Exh. "2" ¶ 3, Attach. "3." Petitioner claimed that the bag of liquid "was in a secured closet that was not in my cell or any other area described as [his] 'area of control[.]'" Petition (Doc. 1) at 6; *see also* Response (Doc. 14), Exh. "2" ¶ 3, Attach. "3." Petitioner further asserted that "the contents of the bag were tested with a blood/alcohol meter – a breathalyzer type device that is used to determine the blood-alcohol content of an intoxicated person, and not to determine the alcohol content of a liquid making this test invalid." *Id.* After the hearing, DHO Petricka "reconfirmed with [SIA] Mendez that he did in fact speak with inmate Weakley over the UDC matter." Response (Doc. 14), Exh. "1," Attach. "5" at 117. SIA Mendez "then stated that he did and felt the group of inmates (which includes Weakley) are again trying to raise more issues in an attempt to either delay their discipline process or get the incident report expunged." *Id.* DHO Petricka examined the evidence, weighed credibility, and found Petitioner guilty and imposed sanctions of 30 days of Disciplinary Segregation, one (1) year loss of Telephone, one (1) year loss of Commissary, and recommendations for alcohol class and a disciplinary transfer. Response (Doc. 14), Exh. "2" ¶ 3, Attach. "3." On August 24, 2011, DHO Petricka signed the DHO report and a copy of the report was provided to Petitioner on April 4, 2012. *Id.*

On July 22, 2011, Petitioner filed an Informal Resolution Form (BP-8) seeking "[a] dismissal of DHO Petricka's findings and a hearing before the alternate DHO, also an

1    investigation into Petricka's competency as a DHO, and the lying reports dismissed pending
2    a proper investigation." Final Response (Doc. 22), Exh. "2." Petitioner signed the BP-8 on
3    July 16, 2011. *Id.* Correctional Counselor L. Johannes e-mailed a copy of Petitioner's July
4    22, 2011 BP-8 to DHO Petricka, who responded on July 25, 2011. Final Response (Doc. 22),
5    Exh. "2;" Response (Doc. 14), Exh. "1," Attach. "5" at 85. Accordingly, on July 27, 2011,
6    Petitioner was given a BP-9.

7    Also on July 22, 2011, Petitioner filed an Informal Resolution Form (BP-8) accusing
8    SIA Mendez of lying regarding his contact with Petitioner when DHO Petricka was
9    investigating the propriety of the UDC proceedings. Final Response (Doc. 22), Exh. "4."
10   This BP-8 was also signed by Petitioner on July 16, 2011. *Id.* Correctional Counselor L.
11   Johannes noted that the BP-8 was e-mailed to Mr. Mendez on July 22, 2011, and Petitioner
12   would be given a BP-10. *Id.*

13   On July 29, 2011, Petitioner filed an Informal Resolution Form (BP-8) seeking
14   "copies of an investigation about myself that was furnished to the DHO and used at a DHO
15   hearing . . . in early July." Final Response (Doc. 22), Exh. "5." This BP-8 was signed by
16   Petitioner on July 23, 2011. *Id.* Correctional Counsel L. Johannes noted that the BP-8 was
17   e-mailed to Ms. Beauchamp, and Petitioner was to receive a BP-10. *Id.*

18   On July 29, 2011, Petitioner also filed an Informal Resolution Form (BP-8) seeking
19   a copy of the July 11, 2011 DHO Report.[1] *See* Final Response (Doc. 22), Exh. "1." The
20   "Correctional Counselor's Comments" indicate that the BP-8 was e-mailed to Ms.
21   Beauchamp on July 29, 2011, and a BP-10 was to be given to Petitioner. *Id.* On July 24,
22   2011, Petitioner filed a Request for Administrative Remedy (BP-9) regarding the DHO
23   report. Final Response (Doc. 22), Exh. "3." On August 11, 2011 through February 17, 2012,
24   Petitioner was on a Federal Writ, and therefore unavailable to pursue his administrative

---

[1] Petitioner claims that this was filed on July 23, 2011; however, his signature is dated July 15, 2011, and the date returned to Correctional Counselor is July 29, 2011. *See* Reply (Doc. 19) at 4; Final Response (Doc. 22), Exh. "1." As noted in the preceding paragraph, the BP-8 signed on July 23, 2011 related to Petitioner's request for documents related to the investigation after the June 24, 2011 DHO hearing. Final Response (Doc. 22), Exh. "5."

remedies.  *See* Final Response (Doc. 22), Memo. from Case Manager M. County 3/9/2012 (Exh. "12A").

After returning to USP-Tucson after being out on a writ, Petitioner filed a Request for Administrative Remedy (BP-9) on March 1, 2012.  Final Response (Doc. 22), Exh. "6."  This BP-9 related to his request for copies regarding the "investigation . . . that was furnished to DHO Petricka[.]" *Id.*  It is also related to the BP-8 submitted on July 29, 2011 and signed on July 23, 2011.  *See id.*, Exh. "5."  On March 13, 2012, Petitioner filed a second Request for Administrative Remedy (BP-9) regarding this issue.  *Id.*, Exh. "8."

Also on March 1, 2012, Petitioner filed a Request for Administrative Remedy (BP-9) seeking a copy of the DHO Report from the July 11, 2011 hearing.  *Id.*, Exh. "7."  This BP-9 was a follow up to Petitioner's July 29, 2011 BP-8 requesting the same, as well as his July 24, 2011 BP-9.  *Id.*, Exhs. "1" & "3."  A note apparently in response to Petitioner's March 1, 2012 BP-9 regarding the DHO report states that "Any DHO issues are an automatic BP-10.  However, Ms. Kiol has a copy if you want to informally resolve."  *Id.*, Exh. "7."  On March 28, 2012, Petitioner filed his Regional Administrative Remedy Appeal (BP-10) broadly labeled "DHO Appeal," seeking a copy of the July 11, 2011 DHO Report, copies of the SIS and UDC reports, and photographic evidence, as well as appealing the DHO's decision.[2]  *Id.*, Exhs. "9," "9A," "9B," "9C;" *see also* Response (Doc. 14), Exh. "1" ¶ 6, Attach. 5 at 53, 58.  Petitioner also notes that he did finally receive the DHO report later that same day.  *Id.*, Exh. "9."  On April 3, 2012, the Administrative Remedy Coordinator sent a letter to Petitioner, informing him that his appeal was rejected as untimely.  Response (Doc. 14), Exh. "1," Attach. "5" at 70.  The letter also provided that Petitioner could cure this deficiency if he could provide staff verification that he was not responsible for the untimely filing of the appeal.  *Id.*  On April 28, 2012, Petitioner resubmitted his BP-10 with staff verification.  Final Response (Doc. 22), Exh. "12," "12A," "12B."

On April 10, 2012, Petitioner filed another Regional Administrative Remedy Appeal

---

[2] The BP-10 was stamped received on March 29, 2012, Petitioner signature is dated March 20, 2012.

- 6 -

1  (BP-10) appealing seeking "copies of all evidence used in [his] hearing and the DHO's
2  decisions."³  Final Response (Doc. 22), Exh. "10;" *see also* Response (Doc. 14), Exh. "1" ¶
3  7, Attach. "5" at 53, 58.  On May 9, 2012, Petitioner filed a Central Office Administrative
4  Remedy Appeal (BP-11).⁴  Final Response (Doc. 22), Exh. "11;" *see also* Response (Doc.
5  14), Exh. "1" ¶ 9, Attach. "5."  The BP-11 appears to be an appeal of Petitioner's March 20,
6  2012 BP-10 seeking review also labeled "DHO Appeal."  *Id.*, Exh. "11" & "11A."  On April
7  24, 2012, the Regional Director responded to Petitioner.  Response (Doc. 14), Exh. "1" ¶ 7;
8  Attach. 5 at 82.  The Regional Director provided instructions for obtaining documents, as
9  well as addressed the merits of the discipline action itself.  *Id.*  Upon review, the Regional
10 Director found that Petitioner had received the requisite due process per BOP policy and the
11 DHO report indicated the basis for the findings therein.  *Id.*  The record does not contain a
12 response to Petitioner's May 9, 2012 BP-11.  On June 9, 2012, Petitioner filed another
13 Central Administrative Remedy Appeal (BP-11) that sought consolidation of all of his
14 pending appeals regarding the July 11, 2011 DHO hearing.  *Id.*, Exh. "13" & "13A."  The
15 BP-11 is not stamped with a date reflecting its receipt.  *Id.*  The record also does not contain
16 a response to this second BP-11.

## III. ANALYSIS

### A. *Jurisdiction*

"Federal courts are always 'under an independent obligation to examine their own jurisdiction,' . . . and a federal court may not entertain an action over which it has no jurisdiction."  *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000) (*quoting FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990), *overruled in part on other grounds by City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774

---

³The BP-10 was stamped received on April 10, 2012, Petitioner signature is dated April 2, 2012.

⁴The BP-11 was stamped received on May 9, 2012, Petitioner's signature is dated April 20, 2012.

(2004)). "Generally, motions to contest the legality of a sentence must be filed under § 2255 in the sentencing court, while petitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to § 2241 in the custodial court." *Id*. at 864. Therefore, a proper characterization of the petition is necessary to a determination of jurisdiction. *Id.*

Additionally, the judicial power of this and all federal courts is limited to actual cases or controversies. U.S. Const. art. III; *see also, Flast v. Cohen*, 392 U.S. 83, 94-95, 88 S.Ct. 1942, 1949-50, 20 L.Ed.2d 947 (1968); *Munoz v. Rowland*, 104 F.3d 1096, 1097 (9th Cir. 1997). "A petition for writ of habeas corpus is moot where a petitioner's claim for relief cannot be redressed by a favorable decision of the court issuing a writ of habeas corpus. *Salazar-Torres v. Benov*, 2014 WL 4960586 (E.D. Cal.) (citing *Burnett v. Lampert*, 432 F.3d 996, 1000-01 (9th Cir. 2005)); *see also Spencer v. Kemna*, 523 U.S. 1, 18, 118 S.Ct. 978, 988, 140 L.Ed.2d 43 (1998).

Here, Petitioner does not claim that the sentencing court imposed an illegal sentence, rather he seeks relief with respect to disciplinary proceedings while incarcerated at a federal facility. Petitioner is challenging the manner, location or condition of the execution of his sentence. *See e.g., Ramirez v. Galaza*, 334 F.3d 850, 858 (9th Cir. 2003) ("a prisoner may seek a writ of habeas corpus under 28 U.S.C. § 2241 for 'expungement of a disciplinary finding from his record if expungement is likely to accelerate the prisoner's eligibility of parole.'") (*quoting Bostic v. Carlson*, 884 F.2d 1267, 1269 (9th Cir. 1988)); *Bostic v. Carlson*, 884 F.2d at 1269 ("Habeas corpus jurisdiction is also available for a prisoner's claims that he has been subjected to greater restrictions of his liberty, such as disciplinary segregation, without due process of law."). Such a challenge must be brought pursuant to § 2241 in the custodial court. At the time of filing the Petition, Petitioner was incarcerated at USP-Tucson in Arizona.

Petitioner alleges that he was sanctioned with *inter alia* the loss of forty-seven (47) good time credits. Petition (Doc. 1) at 6. A review of the July 11, 2011 DHO Report in this matter indicates that no such deprivation was imposed. *Id.* at 15; *see also* Response (Doc.

- 8 -

14), Exh. "1," Chrono. Disciplinary Record (Attach. "4") at 1. Therefore, the only potential liberty interest that Petitioner was deprived of is thirty (30) days of disciplinary segregation, which he served prior to filing this lawsuit. *See Bostic*, 884 F.2d at 1269. In light of Petitioner's life sentence, the Court is skeptical that there is anything to remedy. Respondent, however, did not raise mootness, and Petitioner has not had the opportunity argue against the same. As such, the Court follows the *Bostic* court, and "assume[s] that . . . habeas corpus jurisdiction exists and [Petitioner] had a liberty interest protected by due process." *Bostic*, 884 F.2d at 1269.

### *B. Exhaustion*

#### 1. In General

The Ninth Circuit Court of Appeals has stated:

> [28 U.S.C. § 2241] does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus. [Footnote omitted.] However, we require, as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241.

*Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds*, *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 126 S.Ct. 2422, 165 L.Ed.2d 323 (2006). "The requirement that federal prisoners exhaust administrative remedies before filing a habeas corpus petition was judicially created; it is not a statutory requirement." *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990), *overruled on other grounds by Reno v. Koray*, 515 U.S. 50, 54-55, 115 S.Ct. 2021, 2023-24, 132 L.Ed.2d 46 (1995). "Nevertheless, '[p]rudential limits like jurisdictional limits and limits on venue, are ordinarily not optional.'" *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (alterations in original) (*quoting Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 126 S.Ct. 2422, 165 L.Ed.2d 323 (2006)).

"Courts may require prudential exhaustion if '(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct is own mistakes

and to preclude the need for judicial review.'" *Id.* (*quoting Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003). "When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) (citations omitted). Exhaustion may be excused if pursuing an administrative remedy would be futile. *Fraley v. United States Bureau of Prisons*, 1 F.3d 924, 925 (9th Cir. 1993).

If a prisoner is unable to obtain an administrative remedy because of his failure to appeal in a timely manner, then the petitioner has procedurally defaulted his habeas corpus claim. *See Nigro v. Sullivan*, 40 F.3d 990, 997 (9th Cir. 1994) (citing *Francis*, 894 F.2d at 354; *Martinez*, 804 F.2d at 571). If a claim is procedurally defaulted, the court may require the petitioner to demonstrate cause for the procedural default and actual prejudice from the alleged constitutional violation. *See Francis*, 894 F.2d at 355 (suggesting that the cause and prejudice test is the appropriate test); *Murray*, 477 U.S. at 492 (cause and prejudice test applied to procedural defaults on appeal); *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 906-08 (9th Cir.1986) (cause and prejudice test applied to *pro se* litigants).

### 2. BOP Procedures

The BOP has established an administrative remedy process permitting an inmate to seek review of an issue relating to "any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). Under that process, an inmate seeking to appeal a DHO decision shall submit the appeal "initially to the Regional Director for the region where the inmate is currently located." 28 C.F.R. § 542.14(d)(2). "An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response." 28 C.F.R. § 542.15(a). The deadlines contained within this process may be extended upon request by the inmate and a showing of a valid reason for delay. 28 C.F.R. § 542.15(a); 28 C.F.R. § 542.14(b). An appeal is considered filed on the date it is logged in the Administrative Remedy Index as received. 28 C.F.R. § 542.18. Once an appeal is filed, a

1 Regional Director shall respond within 30 days; General Counsel shall respond within 40
2 days. *Id*. "If the inmate does not receive a response within the time allotted for reply,
3 including extension, the inmate may consider the absence of a response to be a denial at that
4 level." *Id*.

5 Here, Respondent avers that Petitioner has failed to exhaust his administrative
6 remedies. Response (Doc. 14) at 12. Respondent argues that Petitioner "has not complied
7 with the administrative filing requirements and/or completed the appeal processes for any of
8 the above remedies." *Id.* The Court's review of the record shows otherwise. Although,
9 Petitioner's scattered and repetitive approach to seeking administrative remedies makes the
10 record unclear, he does appear to have appealed at every level. Moreover, there is no record
11 that General Counsel ever responded to either of his BP-11 appeals. As such, it was
12 appropriate for Petitioner to consider "the absence of a response to be a denial at that level"
13 when he filed his Petition on August 30, 2012. *See* Petition (Doc. 1); *see also Martin v. Fed.*
14 *Bureau of Prisons*, 2011 WL 6057508, \*2 (C.D. Cal. 2011) ("If General Counsel fails to
15 respond within 40 days, the inmate can assume that the appeal was denied and proceed with
16 a lawsuit."). Additionally, the Ninth Circuit Court of Appeals has recognized that:

> the requirement of exhaustion of remedies [is to] aid judicial review by allowing the appropriate development of a factual record in an expert forum; conserve the court's time because of the possibility that the relief applied for may be granted at the administrative level; and allow the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings.

21 *Ruviwat v. Smith*, 701 F.2d 844, 845 (9th Cir. 1983). In this case, the factual record is
22 adequately developed, and nothing in the record suggests that further administrative review
23 would result in any changes. Accordingly, the Court finds the Petitioner's claims exhausted;
24 however, even if the exhaustion is faulty, it shall be excused and the Court will reach the
25 merits.

26 ***C. Due Process***

27 Petitioner asserts that his due process rights were violated because (1) the incident
28 report did not accuse Petitioner of placing the bag of liquid in the secured hallway; (2) the

- 11 -

photographic evidence did not support a finding of guilt; (3) the liquid was not tested with the Alco-Sensor; (4) DHO Petricka found him guilty and sanctioned behavior (lying) for which he had not been charged; (5) DHO Petricka's alleged refusal to show and provide copies of the evidence used against him; (6) he was denied a proper hearing and investigation because his "Unit Team and SIA Mendez lied[;]" and (7) the Bureau of Prisons' ("BOP") alleged refusal to answer his appeals. *See* Petition (Doc. 1) at 4-7.

"Due process in a prison disciplinary hearing is satisfied if the inmate receives written notice of the charges, and a statement of the evidence relied on by the prison officials and the reasons for disciplinary action." *Zimmerlee v. Keeny*, 831 F.2d 183, 186 (9th Cir. 1987), *cert. denied* 487 U.S. 1207 (1988) (*citing Wolff v. McDonnell*, 418 U.S. 539, 563-66, 94 S.Ct. 2963, 2978-76, 41 L.Ed.2d 935 (1974)). Additionally, "[t]he inmate has a limited right to call witnesses and to present documentary evidence when permitting him to do so would not unduly threaten institutional safety and goals." *Id.* (citations omitted). "Prison disciplinary proceedings[, however,] are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings do[] not apply." *Wolff*, 418 U.S. at 556, 94 S.Ct. at 2975.

Once the minimal procedural requirements of *Wolff* are met, the district court must ask "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent, Mass. Correctional Inst. v. Hill*, 472 U.S. 445, 455-56, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985). "[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." *Id.* "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* Indeed, "[t]he standard is 'minimally stringent' only requiring 'any evidence in the record that <u>could</u> support the conclusion reached by the disciplinary board.'" *Cato v. Rushen*, 824 F.2d 703 (9th Cir. 1987) (*citing Hill*, 472 U.S. at 454-56) (*emphasis* added in *Cato*).

**1. Sufficiency of the Incident Report**

Petitioner asserts that the BOP officer who discovered the bag of liquid did not accuse Petitioner of putting it there. *See* Petition (Doc. 1) at 6. The applicable guidelines are published at 28 C.F.R. § 541.1, *et seq.* (2011), as well as in Program Statement 5270.08 (Doc. 14, Exh. "2", Attach. "1") entitled Inmate Discipline and Special Housing Units.[5] Regarding the Incident Report, the regulations provide that:

> The discipline process starts when staff witness or reasonably believe that [an inmate] committed a prohibited act. A staff member will issue [the inmate] an incident report describing the incident and the prohibited act(s) [he is] charged with committing. [The inmate] will ordinarily receive the incident report within 24 hours of staff becoming aware of [his] involvement in the incident.

28 C.F.R. § 541.5.[6] The Program Statement further directs that

> The reporting employee should complete immediately Part 1 of the Incident Report. The incident is to be one of the prohibited acts listed in Chapter 4 of this Program Statement. The entire language of the prohibited act(s) does not have to be copied. Only the relevant portion need be used. For example, "destroying government property, code no. 218" "possessing narcotics, code no. 109" would be acceptable listings for appropriate charges.

Program Statement 5270.08. Response (Doc. 14), Exh. "2," Attach. "1."

The Incident Report in this case indicates a "Prohibited Act Code" of "222," "making or possessing intoxicants." *See* Petition (Doc. 1) at 13. Senior Officer S. Obrochta described the incident as follows:

> On June 21, 2011, I was conducting searches in the pipe chases in D-1. I found two large khaki bags of homemade intoxicants attached to the back of the toilet button inside of the chase. The intoxicants were attached to the button servicing cell 212. The intoxicants were tested with the Alco-sensor and received a reading of .400. Inmate Weakley 07275-040 is listed on the roster as an occupant of cell 212U and also Inmate Rawlins 67913-061 is listed on the roster as occupying cell 212L.

*Id.* "[T]he function of [the] notice [of a claimed violation] is to give the charged party a

---

[5] The current Program Statement is 5270.09, effective date August 1, 2011. The CFR sections became effective prior to the incident at issue in this case.

[6] The prior version of the CFR provides:
[W]hen staff witnesses or has a reasonable belief that a violation of Bureau regulations has been committed by an inmate, and when staff considers informal resolution of the incident inappropriate or unsuccessful, staff shall prepare an Incident Report and promptly forward it to the appropriate Lieutenant.
28 C.F.R. § 541.14(a).

chance to marshal the facts in his defense and to clarify what the charges are, in fact." *Wolff v. McDonnell*, 418 U.S. 539, 564, 94 S.Ct. 2963, 2978, 41 L.Ed.2d 935 (1974). In this case, "[t]he incident report described the factual situation that was the basis for the finding of guilt of [making or] possess[ing] [intoxicants] and alerted [Petitioner] that he would be charged with [the same]." *Bostic v. Carlson*, 884 F.2d 1267, 1270-71 (9th Cir. 1989). As such, the incident report met the requirements of notice and properly charged Petitioner with a prohibited act.

### 2. Sufficiency of the Evidence

Petitioner asserts that photograph used as evidence in his DHO hearing was "of the inside of a pipe chase closet that was located someplace in the prison, a closet that was secured and locked." Petition (Doc. 1) at 5. Petitioner further asserts that "this same photo was used in the seven other inmates hearings, but described different circumstances and different locations." *Id.*

The photographs that accompanied the Incident Report in this matter were taken by S. Nink at 3:45 a.m. on June 21, 2011. Response (Doc. 14), Exh. "2," Attach. "2." The photographs further indicate that the incident occurred at 3:00 a.m. on June 21, and notes inmates Rawlins and Weakley. *Id.* The comments indicate that "[t]he inmates removed the screws with tweezers and placed the prison made intoxicants in the pipe chases and they were attached to the flushing device for the inmate toilets." *Id.* The photographs depict the toilet flush button unscrewed from the wall and a bag of liquid in the pipe chase. *See id.*

Contrary to Petitioner's assertion, the information accompanying the photographs indicate that it was not simply "inside of a pipe chase closet that was located someplace in the prison," but rather the area adjacent to Petitioner's cell, and also provided information regarding how it was accessed. Also, in his BP-8 signed on July 16, 2011 and filed on July 22, 2011, Petitioner stated that the photo "was used in another inmate's misconduct hearing and was claimed to have been in another closet in another part of the same unit[,]" which is far fewer than the seven other hearings that he now alleges. Petition (Doc. 1) at 18. The record before this Court is devoid of evidence to support Petitioner's claims. The Court finds

- 14 -

that "some evidence" supports the DHO's findings and "the record is not so devoid of evidence that the findings of the [DHO] were without support or otherwise arbitrary." *Superintendent v. Hill*, 472 U.S. 445, 457, 105 S.Ct. 2768, 2775, 86 L.Ed.2d 356 (1985).

### 3. Testing of Liquid

Petitioner asserts that "the contents of the bag were tested with a blood/alcohol meter – a breathalyzer type device that is used to determine the blood-alcohol content of an intoxicated person, and not to determine the alcohol content of a liquid making this test invalid." Petition (Doc. 1) at 6. BOP Program Statement ("PS") 6590.07 outlines the procedures for its Alcohol Surveillance and Testing Program. As an initial matter "[t]he Alco-Sensor Model II, III or IV, shall be used for testing." PS 6590.07 ¶ 6. Although these instruments may be used as a breathalyzer, "[t]he Alco-Sensor instrument shall be used to test liquids suspected of containing alcohol following procedures outlined in the company brochure." *Id.* ¶ 9. Furthermore, "[l]iquids with a test reading of .02 or higher shall be considered positive for alcohol." *Id.*

As such, Petitioner's contention is without merit. The Incident Report documents that the reading was .400, which far exceeds the .02 limit, and the BOP procedures document use of the Alco-Sensor for both testing individuals and suspect liquids. *See* Response (Doc. 14), Exh. "2," Attach. "2;" PS 6590.07.

### 4. Finding of Guilt for Lying

Petitioner asserts that DHO Petricka "impos[ed] such sever [sic] sanctions because [he] had lied to her about [his] unit team and SIA Mendez investigating the report." Petition (Doc. 1) at 6. Petitioner further asserts that "[a]fter the hearing [DHO Petricka] wrote two misconduct reports on me for lying . . . after having already opined my guilt and sanctioning me for it by increasing my sanctions in the instant hearing."

Petitioner was charged with Offense Code 222, a high category offense. Response (Doc. 14), Exh. "2," Attach. "2;" PS 5270.08. BOP policy provides that for high category offenses, "[t]he Discipline Hearing Officer shall impose and execute one or more of sanctions A through M, and, except as noted in the sanction, may also suspend one or more

- 15 -

additional sanctions A through M." PS 5270.08.  DHO Petricka imposed the following sanctions: 30 days of Disciplinary Segregation (Sanction D), one (1) year loss of Telephone (Sanction G), one (1) year loss of Commissary (Sanction G), and recommendations for alcohol class and a disciplinary transfer (Sanction C).  Response (Doc. 14), Exh. "2" ¶ 3, Attach. "3."  As such, the sanctions did not exceed what is mandated by BOP policy.

Furthermore, DHO Petricka noted that "Inmate Weakley neither admitted nor denied the charge before the DHO . . . [and] [t]herefore, [he] presented no evidence to dispute the officer's statement that the incident is true."  Response (Doc. 14), Exh. "2," Attach. "3".  DHO Petricka also found that the reporting officer's statements and observations were more credible.  There is nothing before this Court to support Petitioner's claim that he received a harsher sanction for his Code 222 violation because he lied.  DHO Petricka did not address the separate issues regarding Petitioner's contact with his Unit Team officer or SIA Mendez in her assessment of the June 21, 2011 incident.  The Court finds Petitioner's assertion without merit.

### 5. Alleged Refusal to Show Evidence

Petitioner asserts that DHO Petricka "refuse[d] to comply with [his] requests to view and have copies of the evidence used against [him,]" thereby denying Petitioner of "a fair hearing and [preventing him] from filing an informed appeal."  Petition (Doc. 1) at 8.

The record before this Court demonstrates that Petitioner was delivered a copy of the Incident Report in this matter on June 21, 2011, the same day that it was written.  Response (Doc. 14), Exh. "2," Attach. "2."  DHO Petricka also showed Petitioner a copy of the photographic evidence she relied on during the July 11, 2011 hearing.  Petition (Doc. 1) at 5. Petitioner has repeatedly filed informal resolution forms and requests for administrative remedies in this matter.  It appears from the record, that Petitioner's haphazard filings and failure to wait for a response contributed to his inability file "an informed appeal." Furthermore, there is no evidence to suggest that Petitioner sought an extension of time from the Regional Director, in order to allow sufficient time to acquire documents through informal resolution prior to submission of an appeal.  *See* 28 C.F.R. § 542.14(b).

Additionally, there is no evidence to support Petitioner's assertion that he did not receive a fair hearing. At the initial, June 24, 2011 hearing, DHO Petricka suspended the proceeding when Petitioner said that he was not advised that he waived his right to a UDC hearing. Response (Doc. 14), Exh. "1," Attach. "5" at 118. Upon investigation into that matter, a second DHO hearing was held on July 11, 2011. *See* Response (Doc. 14), Exh. "2," Attach. "3." Petitioner was given an opportunity to present evidence to dispute the account of the reporting officer, but did not do so. *Id.* Petitioner received all the process that was due in this proceeding. *See Zimmerlee v. Keeny*, 831 F.2d 183, 186 (9th Cir. 1987).

### 6. DHO Hearing and Investigation

Petitioner alleges that he was denied a proper hearing and investigation because his "Unit Team and SIA Mendez lied[.]" Petition (Doc. 1) at 9. There is no evidence in the record to support Petitioner's bald assertion against his Unit Team officer or SIA Mendez. Furthermore, the Court does not find DHO Petricka's reliance on the statements of staff members unjustified. *See Bostic*, 884 F.2d at 1271. Certainly, the officers' statements are sufficient evidence for due process. *See Hill*, 472 U.S. at 457, 105 S.Ct. at 2775.

### 7. Alleged Failure to Respond to Appeals

Finally, Petitioner asserts that he was denied due process, "because the Bureau of Prisons has refused to answer my appeal to the hearing officer's decision." Petition (Doc. 1) at 10. As discussed in Section III.C.5., *supra*, it appears that Petitioner's repetitive filings and failure to wait the requisite period for a response contributed to his inability file "an informed appeal." Furthermore, Petitioner did not consistently follow the BOP policy in his attempts to appeal. *See* Section III.B.2, *supra*. Despite these shortcomings, Petitioner filed his Petition and this Court has reviewed the merits of his claims. The Court finds there was no denial of due process.

### D.     *Conclusion*

In light of the foregoing, the Court finds that the due process requirements as delineated by *Wolff* were met in this case. Additionally, the Court finds that the DHO findings were supported by "some evidence" as required by *Hill*, *supra*. Therefore, the

Petitioner's Petition (Doc. 1) shall be denied.

Finally, "the plain language of [28 U.S.C.] §2253(c)(1) does not require a petitioner to obtain a [certificate of appealability] in order to appeal the denial of a §2241 petition." *Harrison v. Ollison*, 519 F.3d 952, 958 (9th Cir. 2008). "Nor is there any other statutory basis for imposing a [certificate of appealability] requirement on legitimate §2241 petitions. Although state prisoners proceeding under §2241 must obtain a [certificate of appealability], *see* §2253(c)(1)(A), there is no parallel requirement for federal prisoners." *Id.* Accordingly, because Petitioner is a federal prisoner bringing a legitimate §2241 petition, a certificate of appealability is not required.

## IV.  MOTION FOR JUDGMENT

Also pending before the Court is Petitioner's Motion for Judgement [sic] in a Civil Case (Doc. 27). To the extent that it seeks a ruling in this matter, and based upon the foregoing, that motion is granted. It will be denied in all other respects.

## V.  RECOMMENDATION

For the reasons delineated above, the Magistrate Judge recommends that the District Judge enter an order:

(1) SUBSTITUTING J. T. Shartle, Warden, as Respondent for Louis W. Winn, Jr. pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and Rule 43(c)(2) of the Federal Rules of Appellate Procedure;

(2) DENYING Petitioner's Petition Under 28 U.S.C. § 2241 For a Writ of Habeas Corpus by a Person in Federal Custody ("Petition") (Doc. 1); and

(3) GRANTING Petitioner's Petitioner's Motion for Judgement [sic] in a Civil Case (Doc. 27) to the extent that it seeks a ruling in this matter.

Pursuant to 28 U.S.C. § 636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. A party may respond to

another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). No replies shall be filed unless leave is granted from the District Court. If objections are filed, the parties should use the following case number: **CV-12-648-TUC-DCB**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review. The Clerk of the Court shall send a copy of this Report and Recommendation to all parties.

DATED this 4th day of May, 2015.

_____
Bruce G. Macdonald
United States Magistrate Judge